GRANT & CO. v. FRANK LOWER & CO.

(No. 2095.)

APPEAL from Webb County. Opinion by WHITE, P. J.

SHOWALTER & NICHOLSON, for appellants.

No counsel appeared for appellees.

**§ 232.** *Contract; executed and executory; delivery of goods ordered; case stated.* Appellees Lower & Co., at Americus, Kansas, shipped to Grant & Co., at Laredo, Texas, upon the order of the latter, a car-load of corn. Under the contract between the parties the corn was to be dry, white corn, and to be delivered by appellees free on board the cars. Appellees, in shipping the corn, had it consigned to their own order at Laredo, Texas, instead of to appellants Grant & Co., who had ordered it. When the corn reached Laredo it was found to be damp and mouldy, and appellants refused to receive it, and they immediately notified appellees of the condition of the corn and their refusal to receive it. Both parties having refused to pay the freight charges on the corn, the railway company sold the same to satisfy said charges. Appellees then brought this suit to recover of appellants the contract price of said corn. Appellants set up as a defense that the corn when it reached Laredo was injured and unmerchantable; that it was not such corn as they had contracted for, and they had therefore refused to receive and pay therefor. Upon exception made thereto by appellees this defense was stricken out, and a trial by jury resulted in a verdict and judgment for appellees for the amount sued for by them. As tried in the lower court, the sole question was as to whether the contract was a complete one when Lower & Co. delivered the corn free on the cars at Americus, Kansas, and whether from that time it belonged to Grant & Co., or whether the contract was incomplete and the corn still belonged to Lower & Co. until it reached Laredo and was received and accepted by Grant & Co. The trial judge construed the contract to be a complete, executed one, when the corn was delivered on board the cars, and in effect so instructed the jury. *Held* error. Mr. Benjamin sums up the principles of law applicable to this question as follows: "*First*, when goods are delivered by the vendor in pursuance of an order to a common carrier for delivery to the buyer, the delivery to the carrier passes the

property, he being the agent of the vendee to receive it, and the delivery to him being equivalent to a delivery to the vendee. *Secondly,* when goods are delivered on board of a vessel to be carried and a bill of lading is taken, the delivery by the vendor is not a delivery to the buyer, but to the captain as bailee for delivery to the person indicated by the bill of lading as the one for whom they are to be carried. . . . *Thirdly,* the fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve the *jus disponendi* and to prevent the property from passing to the vendee. *Fourthly,* the *prima facie* conclusion that the vendor reserves the *jus disponendi* when the bill of lading is to his order, may be rebutted by proof that in so doing he acted as agent for the vendee and did not intend to retain control of the property; and it is for the jury to determine as a question of fact what the real intention was." [Benj. on Sales (3d ed.), § 399.] In Merchants' Nat. Bank v. Bangs, 102 Mass. 295, it is said: "If the bill of lading or other written evidence of the delivery to the carrier be taken in the name of the consignee, or be transferred to him by indorsement, the strongest proof is afforded of the intention to transfer an absolute title to the vendee. But the vendor may retain his hold upon the goods to secure payment of the price, although he puts them in course of transportation to the place of destination by delivery to a carrier. The appropriation which he then makes is said to be provisional or conditional. He may take the bill of lading or carrier's receipt in his own name, or some agent's name, to be transferred on payment of the price of his own, or his agent's indorsement to the purchaser, and in all cases when he manifests an intention to retain this *jus disponendi* the property will not pass to the vendee. Practically, the difficulty is to ascertain, when the evidence is meager or equivocal, what the real intention of the parties was at the time. It is properly a question of

fact for the jury under proper instructions, and must be submitted to them unless it is plain as matter of law that the evidence will justify a finding but one way." [See, also, Benj. on Sales, § 245.] In this case, the defense set up by appellants, and which was stricken out by the court, was a valid defense, if the contract was an incomplete, executory one. The question as to whether the contract was a complete and executed one, or was incomplete and executory, should have been submitted with proper instructions from the court for the determination of the jury, and the court should not have stricken out appellants' special defense, but should have admitted evidence offered in support thereof.

February 5, 1887.　　Reversed and remanded.